JAROMIR KOVARIK, et al.,       :
     Plaintiffs               :       No. 1:17-cv-00097
                            :
     v.                   :       (Judge Kane)
                            :
SOUTH ANNVILLE TOWNSHIP, et al.,  :
     Defendants            :

## MEMORANDUM

Before the Court are: Defendants' motions to dismiss Plaintiffs Jaromir Kovarik ("Mr. Kovarik"), and Daria Kovarikova's complaint (Doc. Nos. 11, 14, 15); Plaintiffs' "Renewed Motion for Leave to Amend[,] or in the Alternative[,] to Consider This Submission as a Brief in Opposition to Defendants' Motions to Dismiss" (Doc. No. 51); Defendants' motion to stay discovery (Doc. No. 72); and Plaintiffs' "Cross Motion in Opposition to Defendants' Motion to Stay Discovery and for Contempt Sanctions" (Doc. No. 73). Additionally pending before the Court are the parties' cross-motions for sanctions filed pursuant to Federal Rule of Civil Procedure 11.  (See Doc. Nos. 24, 25, 43, 53, 54, 55.)  For the reasons provided herein, the Court will: (1) grant the motions to dismiss Counts I, II, IV, and V of Plaintiffs' complaint asserting federal causes of action under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. with prejudice, and decline to exercise supplemental jurisdiction over Plaintiffs' ancillary state law claims pursuant to 28 U.S.C. § 1367(c)(3); (2) deny Plaintiffs' motion for leave to amend their complaint; (3) deny as moot both Defendants' motion to stay discovery and Plaintiffs' motion for "contempt sanctions;"  (4) lift the stay on briefing with regard to Defendants' motions for sanctions; and  (5) deny Defendants' and Plaintiffs' motions for sanctions.

## I.    BACKGROUND[1]

A.    FACTUAL BACKGROUND

Mr. Kovarik, a licensed attorney and serial pro se litigant, is no stranger to this Court. This action marks Mr. Kovarik's latest challenge to the adoption, design, construction, and enforcement of South Annville Township's sewer facilities plan and is brought against a tortured backdrop of continuing litigation in both state and federal court spanning over a decade.

In the most recent chapter of this protracted litigation saga, Plaintiffs have lodged a six-count, 45-page complaint against: South Annville Township (the "Township"), several members of the Township's Board of Supervisors,[2] the Township's Municipal Authority[3] (the "Authority"), and two of the Authority's board members[4] (collectively referred to herein as the

---

[1] The facts comprising the Background Section are taken directly from Plaintiffs' complaint. (Doc. No. 1.)  The Court limits its discussion to only to those factual allegations relevant for purposes of deciding the motions presently before the Court.

[2] Specifically, the members of the Township's Board of Supervisors named in the caption of the complaint include:  Donald H. Umberger, a  "member and the Secretary/Treasurer of the Board of Supervisors and/or Township Manager" (id. ¶ 8); Dale L. Hoover, "a member and the Chairman of the Board of Supervisors" since December 2000 (id. ¶  9); and Chester G. Horst, "a member of the Board of Supervisors" since December 2001 (id. ¶ 10).

[3] While Plaintiffs identify "South Annville Township—Lebanon County Authority," as a Defendant in the caption of the complaint, it is apparent that Plaintiffs are referring to the "South Annville Municipal Authority," which is "responsible for financing, construction, and maintenance of public sewage collection systems in the [T]ownship."  See South Annville Township, Water & Sewer, South Annville Municipal Authority, available at http://www.southannville.com/water-and-sewer/south-annville-municipal-authority/ (last visited Mar. 14, 2018).  The Township's website is a public record of which this Court may properly take judicial notice in considering dismissal of an action for failure to state a claim.

[4] Specifically, Plaintiffs assert claims against the following individuals associated with the Authority:  Roy A. Meyer who has, "at certain relevant times[,] acted as chair of the Authority" (id. ¶ 11); and Patrick P. Brewer, who is a "chairperson and an active member of the Authority" (id. ¶ 12).

"Municipal Defendants"); the Pennsylvania Intergovernmental Risk Management Association ("PIRMA"),[5] and its chairperson[6] (collectively referred to herein as the "PIRMA Defendants"); and H. A. Thomson Company[7] and its executive vice president[8] (collectively referred to herein as the "H. A. Thomson Defendants"). (Doc. No. 1.) In the complaint, Plaintiffs endeavor to weave "disparate events, committed by [several] actors, together into a seamless web of retaliation" dating back to 2005 by "ascribing some retaliatory motive to virtually every action" relating to the Township's sewer facilities plan. (Id. ¶ 124(b)); see Chinniah v. E. Pennsboro Twp., No. 1:15-CV-02240, 2016 WL 5799048, at *7 (M.D. Pa. Aug. 10, 2016), report and recommendation adopted, No. 1:15-CV-02240, 2016 WL 5719830 (M.D. Pa. Sept. 30, 2016), reconsideration denied, No. 1:15-CV-02240, 2017 WL 5517512 (M.D. Pa. Mar. 6, 2017). Indeed, the complaint details an alleged conspiracy concocted by Defendants to abridge Plaintiffs' "freedom of speech by . . . adopting, implementing, and continuing a policy or custom to retaliate against" them. The factual averments forming the basis of this complaint are as follows.

### 1.    The Pennsylvania Sewage Facilities Act

---

[5] According to its website, PIRMA "is a group self-insurance pool that offers comprehensive liability and property coverages to Pennsylvania public entities." See PIRMA, Pennsylvania Intergovernmental Risk Association, Home, http://www.pirma.org/ (last visited Mar. 14, 2018).

[6] The complaint names Nicholas F. Hiriak as a Defendant and alleges that, "upon information and belief, [Nicholas F. Hiriak] is an individual who chairs the Board of Directors of PIRMA." (Id. ¶ 16.)

[7] H.A. Thomson Company markets itself as "Pennsylvania's largest provider of municipal insurance." See H.A. Thomson Risk Management Services, Home, http://www.hathomson.com (last visited Mar. 14, 2018).

[8] The complaint names Thomas P. Giangiulio as a Defendant and asserts that this Defendant is believed to be "the President or Executive Vice President of" H.A. Thomson. (Id. ¶ 18.)

According to the complaint's allegations, Pennsylvania municipalities are required under the Pennsylvania Sewage Facilities Act ("Act 537"), and the regulations adopted by the Pennsylvania Department of Environmental Protection ("DEP"), to develop and implement an approved sewage facility plan and continuously update the plan as circumstances change.  (Id. ¶ 21.)  In approximately 2000, the DEP directed the Township to submit a sewage facility plan update in light of their discovery that the Township was not in compliance with Act 537.  (Id. ¶ 36.)  In response to this directive, the Defendants initially proposed an ordinance authorizing the execution of an inter-municipal agreement with a neighboring township to provide sewage services, which, to Plaintiffs, was the more environmentally friendly and cost effective approach to bringing the Township into compliance with Act 537.  (Id. ¶ 37.)

However, due to increased pressure from certain real estate developers, the Township began soliciting alternative sewage facility plans, ultimately adopting a proposed sewage facility plan designed to account for the Township's projected growth from future large-scale industrial and residential developments (hereinafter referred to as the "Act 537 Plan Update").  (Id. ¶¶ 39-40.)  According to Plaintiffs, the Act 537 Plan Update was a cost-prohibitive alternative for homeowners, as it was anticipated to serve five times the number of households that existed in the Township at that time and was projected to exceed $5.6 million for a community with an annual tax base of less than $1.0 million.  (Id. ¶¶ 49-52.)  Concerned that the proposed design for the Township's sewer system benefited only certain developers at the expense of local residents, approximately 150 residents formed an unincorporated group referred to as the Concerned Citizens of South Annville (the "CCSA"), appointing Mr. Kovarik, a professional engineer and attorney, to represent their interests before the Township.  (Id. ¶ 46.)

2.      2005 Litigation

4

On July 8, 2005, the CCSA, represented by Mr. Kovarik, filed suit against the Municipal Defendants in the Lebanon County Court of Common Pleas (herein referred to as the "2005 litigation"), opposing the design, implementation, funding, and cost of the state-approved Act 537 Plan Update. (Id. ¶ 46.) The action, proceeding on a fifth amended complaint, was ultimately dismissed on preliminary objections by the Lebanon County Court of Common Pleas on April 3, 2007, and the dismissal was affirmed on appeal on June 20, 2008. Strohl v. S. Annville Twp., No. 878 C.D. 2007, 2008 WL 9406465, at *1 (Pa. Commw. Ct. June 20, 2008). Following its dismissal of Plaintiffs' fifth amended complaint, the Lebanon Court of Common Pleas, on the motion of the Municipal Defendants, imposed sanctions against Plaintiffs in the amount of $25,000.00. (Id. ¶ 56.) The CCSA appealed the order imposing sanctions, which was vacated in a decision by the Commonwealth Court of Pennsylvania on April 13, 2011. Strohl v. S. Annville Twp., No. 2162 C.D. 2009, 2011 WL 10858400, at *5 (Pa. Commw. Ct. Apr. 13, 2011). Specifically, the appellate court found that the trial court was without jurisdiction to act on the request for sanctions, as the motion had been filed more than thirty days after the trial court dismissed the fifth amended complaint on April 3, 2007. [9] (Id.) According to Plaintiffs, Defendants retaliated against them for exercising their right to access the courts for redress by engaging in litigation misconduct, including belatedly requesting sanctions. (Doc. No. 1 ¶ 80.)

_____

[9] Plaintiffs also complain that Defendants engaged in retaliation by "intimidat[ing] several CCSA residents who had been the subject of the court-ordered monetary sanctions into initiating a professional malpractice suit against Mr. Kovarik "on false grounds" in February of 2010. (Doc. No. 1 ¶¶ 74, 76.) Plaintiffs contend that the legal malpractice lawsuit was frivolous because Mr. Kovarik was successful in his representation of the CCSA, convincing the Township to "change . . . the sewer alternative and funding." (Id. ¶ 77 n.7.) Notably, the CCSA residents later dismissed the legal malpractice suit voluntarily when the award of sanctions was reversed on April 13, 2011. (Id. ¶ 79.)

### 3.    Sewer System Connection and Water Service Disconnection

In the aftermath of the 2005 litigation, a dispute arose concerning the connection of Plaintiffs' property to the newly constructed sewer lines.  (Id. ¶ 84.)  As alleged in the complaint, the lateral line connecting Plaintiffs' property to the sewer system was deliberately set at a shallow depth to prevent service to Plaintiffs' basement, while neighbors' laterals were installed at proper depths that allowed for gravity flow.  (Id. ¶¶ 84-89.)  According to Plaintiffs, neighbors whose residences were located "below the road grade," and unable to connect to the sewer system by gravity, were offered free sewage grinder pumps to assist in connecting to the gravity main.  (Id. ¶ 91.)  However, Plaintiffs aver that because their house "is[,] in fact[,] on the highest grade in the neighborhood," they were not furnished with a free sewage grinder pump.  (Id. ¶ 91 n.10.)  Furthermore, Plaintiffs allege that "an abrupt turn in the sewer line was placed against [their] . . . house[,] causing vibration and noise during the operation of the sewer system pumps." (Id. ¶ 92.)  Plaintiffs insist that Defendants subjected them to retaliation for their involvement in the 2005 litigation by installing the sewer lines in a manner that would place undue financial burdens on Plaintiffs as compared to other residents.  (Id. ¶ 84 ("Although the sewer system within the existing South Annville residences designated for the connection has been constructed, [Plaintiffs'] conditions for connection were deliberately conditioned on injury to their interests and property.")).

Plaintiffs allege that they attempted to resolve the issues surrounding their connection to the sewer line during this time period by requesting estimates for connection to the sewer system and through proposing several mitigating alternatives.  (Id. ¶¶ 96-97.)  However, despite Plaintiffs' "good faith" efforts, "Defendants refused to discuss the matter."  (Id. ¶ 97.)  Instead, on April 5, 2013, Defendants allegedly caused the Pennsylvania American Water Company to

disconnect water service to Plaintiffs' property without first providing Plaintiffs with proper notice and damaged the access to the shut-off valve in the process.[10] (Id. ¶ 98.) By Plaintiffs' account, they were current on their water bill at all relevant times. (Id. ¶ 99.) Plaintiffs claim that the disconnection of water service to their property was improper and retaliatory in nature.

### 4.  June 2013 Municipal Claim Litigation

Thereafter, on June 14, 2013, the Authority filed a municipal claim and lien against Plaintiffs' property in the Lebanon County Court of Common Pleas to collect unpaid sewer tapping and rental fees in the amount of $8,010.90 (herein referred to as the "June 2013 municipal claim litigation"). (Id. ¶¶ 103, 104.) By Plaintiffs' assessment, the Authority "caused an improper entry of judg[ ]ment and facially defective municipal lien to be entered in the Lebanon Court of Common Pleas for sewer connection and processing at [Plaintiffs'] property without any basis in law or fact." (Id. ¶ 103.) Consequently, on July 18, 2013, Plaintiffs removed the case to the United States District Court for the Middle District of Pennsylvania, later claiming, as a defense to removal, that the municipal lien action was filed in retaliation for Plaintiffs' exercise of their First Amendment rights. S. Annville Twp., Lebanon Cty. Auth. v. Kovarik, Civ. No. 1:13-cv-01780 (M.D. Pa. June 28, 2013). The Authority promptly filed a motion to remand the action to state court. On June 24, 2014, following several briefing extensions, and after denying Plaintiffs' request to conduct jurisdictional discovery, the Court granted the Authority's motion and remanded the matter to state court on the basis that Plaintiffs lacked an objectively reasonable basis for removal. In a separate Order, the Court entered an award of attorneys' fees and costs in the amount of $17,310.66 pursuant to 28 U.S.C. § 1447(c).

---

[10] Plaintiffs also contend that they reported the damage to their shut-off valve to the proper authorities, but that the Township police "refused to act." (Id. ¶ 21.)

As it concerns this phase of the June 2013 municipal claim litigation, Plaintiffs contend that Defendants deprived them of their constitutionally-protected rights under the First Amendment by "interfer[ing] with [their] request to" conduct jurisdictional discovery, which would have revealed some basis upon which this Court could exercise federal question jurisdiction over the municipal claim action and would have invalidated any request for attorneys' fees. (Id. ¶ 107.)

Plaintiffs ultimately appealed the Court's Order awarding attorneys' fees to the United States Court of Appeals for the Third Circuit. (Id. ¶ 110.) Plaintiffs allege that during the pendency of that appeal, the Authority withdrew its state court claim against Plaintiffs on January 14, 2015, leaving intact the statutory municipal lien placed on Plaintiffs' property, which precipitated Plaintiffs' filing of a motion under Federal Rule of Civil Procedure 60(b) for relief from judgment as to the attorney fee award on March 13, 2015. (Id. ¶ 111.) The Court denied Plaintiffs' motion for relief from judgment on August 4, 2015. See S. Annville Twp., Lebanon Cnty. Auth. v. Kovarik, Civ. No. 1:13-cv-01780 (M.D. Pa. June 28, 2013). Shortly thereafter, Plaintiffs filed a second appeal of the Court's Order denying their Rule 60(b) motion. Id. In an Opinion dated June 3, 2016, the Third Circuit consolidated both appeals and affirmed this Court's award of attorneys' fees. See S. Annville Twp. v. Kovarik, 651 F. App'x 127, 128 (3d Cir.), cert. denied sub nom. Kovarikova v. S. Annville Twp., Lebanon Cty. Auth., 137 S. Ct. 580, (2016). According to Plaintiffs, the withdrawal of the municipal lien was yet another act of retaliation on the part of Defendants.

In essence, the above-captioned action is founded on Plaintiffs' conviction that "the conduct of the Defendants . . . is and has been motivated or substantially caused by [Plaintiffs'] exercise and intent to exercise in the future the rights secured to them under the First and Fourteenth Amendments to the Constitution of the United States." (Doc. No. 1 ¶ 126.) Indeed,

Plaintiffs signal throughout their complaint that "unlike any other property owners to be serviced by the sanitary system, [Plaintiffs] have been required to both pay extraordinary costs to exercise their protected rights through unnecessary attorney's fees, legal costs, loss of reputation, damage to credit, loss of local clients for Mr. Kovarik and other damages." (Id. ¶ 117.) The complaint demands "compensatory, equitable[,] liquidated, nominal, treble, punitive and other damages to the maximum extent allowed by law," as well as "injunctive relief," and "mandamus relief" for alleged violations of federal and state law. (Id. at 42.)

B.    PROCEDURAL HISTORY

Plaintiffs commenced this lawsuit on January 17, 2017. (Doc. No. 1.) On March 17, 2017, the parties entered into and docketed a stipulation to allow Plaintiffs to file an amended complaint within twenty-one days of the Court's Order approving the stipulation, and to permit Defendants to respond to Plaintiffs' amended complaint within twenty-one days from their receipt of Plaintiffs' amended complaint. (Doc. No. 8.) On March 20, 2017, while awaiting a ruling on their joint stipulation, Defendants filed the pending motions to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 11, 14 15.) The Court approved the stipulation on March 22, 2017. (Doc. No. 16.)

Plaintiffs elected not to file an amended complaint by April 12, 2017—twenty-one days from the date the Court approved the joint stipulation on March 22, 2017. As a result, Defendants proceeded to file briefs in support of their respective motions to dismiss (Doc. Nos. 37, 38, 41).[11] In the midst of briefing their motions to dismiss, Defendants moved for the imposition of sanctions under Federal Rule of Civil Procedure 11 (Doc. Nos. 24, 25, 43).

---

[11] Document Number 40, containing the Municipal Defendants' amended brief in support of the motion to dismiss, is identical to Document Number 38, but for the inclusion of a certificate of word count.

Specifically, the Municipal Defendants and the PIRMA Defendants each filed motions for sanctions on April 13, 2017 (Doc. Nos. 24, 25), submitting briefs in support of their motions on April 27, 2017 (Doc. Nos. 30, 31).  The H.A. Thomson Defendants filed a motion for sanctions on May 3, 2017 (Doc. No. 43), and a supporting brief on May 17, 2017 (Doc. No. 46).  On May 15, 2017, Plaintiffs filed a motion captioned:  "Plaintiffs['] Amended Motion to Dismiss or in the Alternative Hold in Abeyance Defendants' Fed.R.Civ.P. 11 Motions."  (Doc. No. 44.)  In their motion, Plaintiffs requested, <u>inter alia</u>, that the Court deny Defendants' motions for Rule 11 sanctions as prematurely filed, or alternatively, stay further briefing and defer its ruling on the motions for sanctions pending the Court's disposition of Defendants' motions to dismiss.  On May 16, 2017, Plaintiffs requested an extension of time to file an amended complaint, or alternatively, for leave to file an amended complaint.  (Doc. No. 45.)

In an Order dated May 23, 2017, the Court denied Plaintiffs' motion for an extension of time to file an amended complaint or alternatively, for leave to file an amended complaint, clarifying that Plaintiffs were foreclosed from filing an amended complaint as a matter of course, and consequently, they were required under Local Rule 15.1(a) to obtain leave of Court through filing a properly-supported motion for leave to file an amended complaint together with an attached proposed amended pleading.  (Doc. No. 50.)  Plaintiffs were directed to file briefs in opposition to Defendants' motions to dismiss no later than June 6, 2017, and were cautioned that a failure to file oppositional briefs within that timeframe would result in the Court deeming Defendants' motions unopposed.  (<u>Id.</u> at 5.)  In addition, the Court stayed briefing on Defendants' Rule 11 motions pending a decision on the motions to dismiss.  (<u>Id.</u>)

On June 6, 2017, Plaintiffs filed a "renewed motion for leave to amend or[,] in the alternative[,] to consider this submission as a brief in opposition to Defendants' motions to

dismiss" (Doc. No. 51), together with a supporting brief (Doc. No. 52).[12] On June 20, 2017, Defendants collectively filed a brief in opposition to Plaintiffs' alternatively-styled motion to amend (Doc. No. 59), and on July 5, 2017, Plaintiffs filed a reply brief (Doc. No. 64).

Meanwhile, no sooner did the Court stay Defendants' motions for sanctions than Plaintiffs filed cross-motions for sanctions on June 12, 2017. (Doc. Nos. 53, 54, 55.) On June 26, 2018, while the stay was still in effect, Plaintiffs filed "[B]rief[s] in Opposition to . . . Defendants' Motion[s] [for Sanctions] and in Support of [their] Cross-Motion[s] for . . . Sanctions Pursuant to Fed.R.Civ.P. 11 Against the . . . Defendants." (Doc. Nos. 60, 61, 62, 63.) Shortly thereafter, Defendants filed briefs in opposition to Plaintiffs' cross-motions for sanctions on July 10, 2017. (Doc. Nos. 65, 66, 67.) On July 25, 2017, Plaintiffs filed reply briefs to Defendants' briefs in opposition to Plaintiffs' cross-motions for sanctions. (Doc. Nos. 68, 69, 70.) To date, the stay remains in place.[13]

Having been fully briefed, the pending motions are now ripe for disposition.

## I.    LEGAL STANDARD

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of

---

[12] The Court construes Plaintiffs' brief in support of their renewed motion to amend (Doc. No. 52), as a brief in opposition to Defendants' motions to dismiss.

[13] Given that the parties proceeded to brief the motions for sanctions while the stay was in place, the Court will lift the stay and rule on the motions presently before it without directing any further briefing.

relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, the court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citation and quotation marks omitted).[14]

As a final matter, the court must be mindful of its obligations to liberally construe documents filed pro se. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Indeed, a pro se complaint, "however inartfully pleaded," is generally held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

---

[14] The Court has taken judicial notice of certain docket entries in the matter of South Annville Township, Lebanon County Authority v. Jaromir Kovarik, Civil No. 1:13-cv-01780 (M.D. Pa. June 28, 2013). A court may properly take judicial notice of, and give effect to, its own records in another, interrelated proceeding. See Fed. R. Evid. 201; Ernst v. Child & Youth Servs. of Chester Cty., 108 F.3d 486, 498–99 (3d Cir. 1997); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Furthermore, the Court has taken judicial notice of the decisions in Strohl v. South Annville Township, No. 2005-0911 (Lebanon Cty. C.C.P. Apr. 3, 2007); Strohl v. South Annville Township, No. 878 C.D. 2007, 2008 WL 9406465, at *1 (Pa. Commw. Ct. June 20, 2008); Strohl v. South Annville Township, No. 2005-00911, 2009 WL 8399050, at *1 (Pa. Commw. Ct. Dec. 24, 2009), vacated, Strohl v. South Annville Township, No. 2162 C.D. 2009, 2011 WL 10858040, at *1 (Pa. Commw. Ct. Apr. 13, 2011). These opinions are judicially noticeable "not for the truth of the facts recited therein, but for the[ir] existence . . . , which [are] not subject to reasonable dispute over [their] . . . authenticity." S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (citation omitted). Consideration of these materials does not require conversion of the motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6) into motions for summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d).

to relief. <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972). <u>Pro se</u> attorney-litigants such as Mr. Kovarik, however, "typically 'cannot claim the special consideration which the courts customarily grant to <u>pro se</u> parties.'" <u>Allegrino v. Conway E & S, Inc.</u>, No. CIVA 09-1507, 2010 WL 1687558, at *6 (W.D. Pa. Apr. 26, 2010) (quoting <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 82 n.4 (2d. Cir. 2001)); <u>see</u> <u>Smith v. Plati</u>, 258 F.3d 1167, 1174 (10th Cir. 2001) ("While we are generally obliged to construe pro se pleadings liberally, . . . we decline to do so here because [plaintiff] is a licensed attorney.") (citation omitted); <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys such as [plaintiff] typically cannot claim the special consideration which the courts customarily grant to <u>pro se</u> parties.") (internal quotations omitted); <u>Godlove v. Bamberger, Foreman, Oswald, and Hahn</u>, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of <u>pro se</u> applicants gently, but a <u>pro se</u> lawyer is entitled to no special consideration."). Thus, irrespective of Mr. Kovarik's status as a <u>pro se</u> litigant, the Court declines to afford him the substantial degree of latitude it would otherwise extend to non-licensed <u>pro se</u> litigants given his representation that he is a licensed attorney admitted to practice in Pennsylvania.

B.    <span style="font-variant:small-caps">Motion for Leave to File an Amended Complaint under Federal Rule of Civil Procedure 15(a)</span>

Federal Rule of Civil Procedure 15(a) embodies a liberal approach to amendment of pleadings, instructing that a "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); <u>see</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) ("[T]his mandate is to be heeded."). Indeed, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 204 (3d Cir. 2006). Among the grounds that may justify a court's denial of leave to amend are

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182. A pleading will be deemed futile if, as amended, it fails to state a claim upon which relief may be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) ("Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss."). In assessing "futility," a court applies the standard of legal sufficiency set forth under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     DISCUSSION

### A.     MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiffs advance six causes of action in their complaint. (Doc. No. 1.) Count I asserts a First Amendment retaliation claim under 42 U.S.C. § 1983.[15] Count II asserts a claim of civil

---

[15] It bears noting that Plaintiffs' complaint (and proposed amended complaint for that matter) straddles the "shotgun pleading" line. The United States Court of Appeals for the Eleventh Circuit recently categorized shotgun pleadings into distinct types. Among the categories identified by the Eleventh Circuit are: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not . . . connected to any particular cause of action"; and (3) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015). In reviewing Plaintiffs' complaint, the Court observes that each count of the complaint incorporates by reference all allegations contained in the preceding numbered paragraphs. Moreover, the complaint adopts a sort of "collective accusation" approach to pleading in that it does not ascribe particular conduct to a defendant, but rather collectively asserts all claims against all defendants. Further, the complaint is peppered with vague and conclusory factual allegations that are not clearly tied to any particular cause of action. While

conspiracy, although it does not identify the statutory or constitutional basis for such claim.

Count III asserts violations of the Pennsylvania Constitution. Count IV raises a claim under the

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"). Count

V asserts an abuse of process claim, although it is unclear whether this claim is brought under

federal or state law. Lastly, Count VI alleges a state law claim of "wrongful use of civil

proceedings." Significantly, unlike Count I of the complaint, which asserts a claim of

"[r]etaliation under [Section] 1983," and Count VI of the complaint, which clearly references

violations of 42 Pa. Cons. Stat. § 8351, Counts II and V of the complaint do not specify the

source of law giving rise to Plaintiffs' claims of civil conspiracy and abuse of process. In light

of this glaring ambiguity, and out of an abundance of caution, the Court analyzes Counts II and

V under Section 1983.

> **1.      First Amendment Retaliation (Count I) & Abuse of Process (Count V) under Section 1983**

Defendants move to dismiss Counts I and V of the complaint as time-barred.[16]  (Doc. No.

38 at 15.)  Count I of Plaintiffs' complaint sets forth a claim of "[r]etaliation under [Section]

1983." (Doc. No. 1 at 29.)  Plaintiffs claim in Count I that they have endured a pattern of

ongoing deprivations of their First Amendment rights, beginning with the unsuccessful 2005

litigation that was brought by Mr. Kovarik in his capacity as legal counsel for the CCSA, and

---

typically, the Court would dismiss the complaint with leave to amend for failure to comply with
Federal Rule of Civil Procedure 8, here, the complaint suffers from other incurable deficiencies
that justify dismissal with prejudice.

[16] While the Municipal Defendants move to dismiss all but Count IV of the complaint as barred
by the statute of limitations, the Court addresses Defendants' statute of limitations defense only
as it relates to those claims giving rise to federal jurisdiction.

culminating in Defendants' discontinuation of their municipal claim action against Plaintiffs on January 14, 2015.

Similarly, Count V of Plaintiffs' complaint, asserting a claim of abuse of process, alleges, in pertinent part, that:

> 162. Defendants started proceedings against Mr. Kovarik for the legal fees and sanctions more than a month after [the 2005 litigation] was concluded on false grounds, using false affidavits and statements, when they knew or should have known that the court had no authority to adjudicate [their request for sanctions].
>
> . . .
>
> 165. Defendants continued their abuse of process when they started new proceedings in the [June 2013 municipal claim litigation] . . . [,] procur[ing] improper judgment against [Plaintiffs] and their property based on [a] false affidavit without proper basis in fact or law.
>
> 166. Defendants continued the proceedings in the United States District Court for the Middle District of Pennsylvania . . . to amass legal fees and costs exceeding more than two times the amount in controversy to intimidate [Plaintiffs] rather than resolve the dispute.
>
> 167. When given the opportunity to resolve the dispute in the Lebanon County Court of Common Pleas after remand, Defendants withdrew their claim.
>
> . . .
>
> 169. Defendants['] actions constitute a continuous scheme and modus operandi undertaken with intent to harm [Plaintiffs] or with reckless disregard as to their rights to participate in their local government and petition [the] government for their grievances.

(Id. at 38-39.)

Accepting the factual averments in the complaint as true, and viewing all reasonable inferences drawn therefrom in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs can prove no set of facts under which they would be entitled to relief. It is well established that actions brought under Section 1983 are "governed by the personal injury statute

of limitations of the state in which the cause of action accrued." O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006); see Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). Under Pennsylvania law—the law of the forum in which the alleged violations of Plaintiffs' constitutional rights occurred—the statute of limitations for personal injury actions is two years. 42 Pa. Con. Stat. § 5524. Accordingly, Counts I and V of Plaintiffs' complaint are subject to the two-year limitations period applicable to personal injury actions.

As the Defendants persuasively argue, Plaintiffs predicate Section 1983 liability on allegations of actionable conduct occurring beyond the controlling two-year statute of limitations period. Because this action was instituted on January 17, 2017, the relevant two-year statute of limitations forecloses any federal civil rights claim grounded on allegations of discrete retaliatory acts occurring before January 14, 2015.[17] Indeed, January 14, 2015 is the latest possible date that a timely Section 1983 claim could arise for a complaint filed on January 17, 2017, because January 14 and 15, 2017 fell on a weekend, and Monday, January 16, 2017 was a federal holiday. Excluding from the calculation the date the Authority withdrew its municipal claim on January 14, 2015, all remaining allegations of constitutional misconduct chronicled by Plaintiffs in relation to their First Amendment claim—namely, the 2005 litigation, the installation of the lateral line for connection of Plaintiffs' home to the newly-constructed sewer system, the April 2013 disconnection of Plaintiffs' water service, and the June 2013 municipal claim litigation— are time-barred, as they clearly did not transpire within two years of the date Plaintiffs filed suit on January 17, 2017. Likewise, Plaintiffs' abuse of process claim challenging the 2005 litigation

---

[17] See Fed. R. Civ. P. 6(a)(1)(c) ("[I]n computing any time period specified in these rules . . . or in any statute that does not specify a method of computing time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

and the June 2013 municipal claim litigation, particularly the attorneys' fees sought by

Defendants in connection with their motion to remand to state court on July 26, 2013, which was

awarded by this Court on September 25, 2014, is also time-barred because Plaintiffs "would have

had reason to know on those dates the injuries which the tort encompasses." Rose v. Bartle, 871

F.2d 331, 351 (3d Cir. 1989); see U.S. Bank, Nat. Ass'n v. Rosenberg, No. CIV.A. 12-723, 2013

WL 6712231, at *6 (E.D. Pa. Dec. 20, 2013) ("[A]buse-of-process claims accrue only after

initiation of civil proceedings when some process is abused.").

Disregarding all time-barred allegations, what remains is Plaintiffs' lone averment that

the Authority withdrew its municipal lien claim on January 14, 2015 in the midst of Plaintiffs'

consolidated appeal of this Court's previous Orders, which granted Defendants' motion to

remand the municipal claim action to the Lebanon County Court of Common Pleas and imposed

an award of attorney's fees. The Authority's withdrawal of its municipal claim, however, is not

an adverse action sufficient to state a cognizable claim of retaliation under the First Amendment.

"[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1)

constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary

firmness from exercising his constitutional rights, and (3) a causal link between the

constitutionally protected conduct and the retaliatory action." Thomas v. Indep. Twp., 463 F.3d

285, 296 (3d Cir. 2006) (addressing retaliation for filing a lawsuit); see also Koren v. Noonan,

586 F. App'x 885, 887–88 (3d Cir. 2014) (per curiam). With regard to the second element, it is

beyond cavil that the Authority's withdrawal of the municipal claim—the sole allegation falling

within the statute of limitations—cannot support a plausible First Amendment retaliation claim

as a matter of law, as it would not deter a person of ordinary fitness from exercising his

constitutional rights.

19

To the extent that Plaintiffs contend that the act of withdrawing the municipal claim itself amounts to an abuse of process, Plaintiffs' theory of liability is without merit. Malicious abuse of process lies only "where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989) (citing Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977)). "To sustain a claim for abuse of process, a plaintiff must show that the defendant used a legal process to accomplish a purpose for which the process was not designed." Evans v. Durham Life Ins. Co., No. CIV. A. 00-281, 2001 WL 770803, at *2 (E.D. Pa. July 9, 2001) (citation and quotation marks omitted). "[T]here is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100 F. App'x 126 (3d Cir. 2004) (citation omitted). Here, the allegation that Defendants subsequently withdrew their municipal lien claim on remand following an improper initiation of a June 2013 municipal lien action in state court does not give rise to an actionable abuse of process claim, as it is not suggestive of misuse of legal process for some unlawful object. See Williams v. Fedor, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999) ("Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution."). The only reasonable inference that can be drawn from this allegation is that process was carried out to its authorized conclusion.

To summarize, all but one of the allegations forming the basis of Plaintiffs' First Amendment and abuse of process claims predate the two-year limitations period applied to federal civil rights claims brought under Section 1983. Thus, Plaintiffs' claims based on those untimely factual averments must be dismissed as time-barred. Moreover, as it relates to the

averment that the Authority withdrew its municipal lien claim on January 14, 2015, such action does not support Plaintiffs' First Amendment retaliation or abuse of process claims. Accordingly, the Court will grant Defendants' motions to dismiss Counts I and V of the complaint with prejudice.

### 2. Civil Conspiracy under Section 1983 (Count II)

Plaintiffs caption Count II of the complaint "Civil Conspiracy." (Doc. No. 1 at 33.) While not explicitly stated in the complaint, it appears that Plaintiffs' civil conspiracy claim is brought under Section 1983. See Berrios v. City of Phila., 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) ("A cause of action for conspiracy to violate constitutional rights exists under [S]ection 1983."). To maintain an action for civil conspiracy under Section 1983, a plaintiff must show "both the deprivation of a constitutional right and the existence of a conspiracy to violate that right." Wodarski v. Erie Office of Children & Youth Servs., No. CIV.A. 10-292, 2012 WL 602933, at *4 (W.D. Pa. Feb. 23, 2012) (citing Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under [Section] 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."); see PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) ("[C]ivil conspiracy is [merely] a vehicle by which [Section] 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights.").

As addressed in detail above, Plaintiffs' First Amendment retaliation claim (Count I), and abuse of process claim (Count V), are subject to dismissal. It follows then, that in the absence of an actual violation of a constitutional right under Section 1983, Plaintiffs' conspiracy claim necessarily fails. See Perano v. Twp. of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011) ("As a

threshold matter, . . . a [Section] 1983 conspiracy claim only arises when there has been an actual deprivation of a right."); Gibbs v. Hartsky, No. CIV.A.98-787 JJF, 2004 WL 1328278, at *3 (D. Del. Mar. 31, 2004), aff'd, 122 F. App'x 597 (3d Cir. 2005) ("[W]ithout an underlying constitutional injury, a plaintiff cannot succeed on a civil conspiracy claim pursuant to Section 1983."); Morley v. Phila. Police Dep't, No. CIV.A.03-880, 2004 WL 1527829, at *7 (E.D. Pa. July 7, 2004), aff'd, 125 F. App'x 457 (3d Cir. 2005) (granting summary judgment in favor of defendant on plaintiff's Section 1983 civil conspiracy claim due to plaintiff's failure "to demonstrate the deprivation of a constitutional right," and reasoning that "Section 1983 does not create a cause of action per se for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under Section 1983") (citation and quotation marks omitted);  see also Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (finding that there can be no liability for a conspiracy to violate Section 1983 without an actual violation of Section 1983), aff'd, 165 F.3d 242 (3d Cir. 1999).[18]  Accordingly, the

---

[18] While it need not consider alternative grounds for dismissal, the Court notes that Plaintiffs also fail to provide a "factual basis to support the existence of the elements of a [Section 1983] conspiracy: agreement and concerted action."  Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009).  Specifically, a "plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events."  Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000); see Grigsby v. Kane, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) (holding that plaintiff must allege the period, object, and acts taken in furtherance of a conspiracy to defeat a motion to dismiss); Loftus v. Se. Pa. Transp. Auth., 843 F. Supp. 981, 986 n.8 (E.D. Pa. 1994) (citing Black & Yates, Inc. v. Mahogany Ass'n, Inc., 129 F.2d 227, 231 (3d Cir. 1941) ("A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action.")). "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." Grigsby, 250 F. Supp. 2d at 458.  Here, aside from the "mere incantation of the words 'conspiracy' [and] 'acted in concert,'" the complaint is entirely devoid of factual allegations supporting the existence of an agreement between Defendants to violate Plaintiffs' constitutionally-protected civil rights, and thus must be dismissed for failure to state a claim on

22

Court will grant Defendants' motions to dismiss Count II of the complaint with prejudice insofar as it asserts a federal cause of action under Section 1983.

### 3. RICO violation (Count IV)

The Defendants also urge the Court to dismiss Count IV of the complaint for failure to state a RICO claim. The civil RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[19] 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must allege each of the following four elements required by the statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The RICO statute catalogs an exhaustive laundry list of predicate acts constituting "racketeering activity," which includes federal mail fraud under 18 U.S.C. § 1341 and federal wire fraud under 18 U.S.C. § 1343. See 18 U.S.C. § 1961(1). The RICO statute further defines a "pattern" of racketeering activity as two or more predicate acts that are "related and . . . amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Turning to the allegations set forth in Count IV of the complaint, Plaintiffs aver, in relevant part, that:

---

this basis as well. Loftus, 843 F. Supp. at 987; see Eichelman v. Lancaster Cty., 510 F. Supp. 2d 377, 393 (E.D. Pa. 2007) ("To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement—'the sin qua non of a conspiracy.'").

[19] Plaintiffs do not specify which subsections of the RICO statute Defendants allegedly violated. However, in an effort to afford Plaintiffs a fair review of their complaint, the Court analyzes Plaintiffs' RICO claim under 18 U.S.C. § 1962(c).

146.    Defendants functioned as a continuing unit since about 2002.

147.    Each Defendant was at a certain time a member of the enterprise.

. . .

149.    Individual Defendants misused their official positions and mandates to operate, manage and carry out the enterprise affairs and used Township Defendants as some of the operating structures for the enterprise.

. . .

150.    As an example, the Authority, [Roy A.] Meyer, and [Patrick P.] Brewer engaged in [a] legal scheme by sending regular invoices for payment of non-provided services (sewage and waste processing) and continuing threats to disconnect water supply to [Plaintiffs].

151.    No sewerage waste, however, could have been processed by the Authority because Kovariks are not connected to the sewer system.

152.    The water delivery was discontinued and Defendants refused to give permission to re-connect[ ] . . . to [Plaintiffs'] property allegedly for non-payment of non-provided services.

153.    The invoices . . . purposefully and willfully misstate that the money is owed for processing of [Plaintiffs'] waste and contain false facts under color of official right.

154.    Defendants have been informed in writing . . . about their wrongful conduct to no avail.

155.    The scheme and fraudulent mailings resulted in entry of erroneous lien and judgment against [Plaintiffs] and their property and are likely to result in further losses and injury.

156.    The above[-]named Defendants have been using the mail and color of official right to further their schemes and are likely to continue to do so.

157.    Upon information and belief, the Individual Defendants conspired in using their governmental power to gain personal and illegitimate rewards under color of official right.

(Doc. No. 1 at 37.)

By the Court's reading of the complaint, the only "predicate act" arguably alleged is the

"regular" mailing of purportedly fraudulent "invoices for payment of non-provided services

(sewerage and waste processing)." (Id. ¶¶ 150-51.) Indeed, it appears that Plaintiffs have attempted to assert a RICO action with a mail fraud predicate. The mail fraud statute prohibits, inter alia, use of the mails "for the purpose of executing" any "scheme or artifice to defraud." 18 U.S.C. § 1341. Properly pleading the predicate act of mail fraud requires that a plaintiff establish "two essential elements: '1) a scheme to defraud; and 2) the use of the mails or wires for the purpose of executing the scheme.'" Royal Indem. Co. v. Pepper Hamilton LLP, 479 F. Supp. 2d 419, 428 (D. Del. 2007) (citation omitted). The Third Circuit has described "scheme" or "artifice to defraud" in the following manner:

> Under the mail fraud statute, a scheme or artifice to defraud "need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Pearlstein, 576 F.2d 531, 535 (3d Cir. 1978). The scheme need not involve affirmative misrepresentation, see United States v. Frankel, 721 F.2d 917 (3d Cir. 1983), but the statutory term "defraud" usually signifies "'the deprivation of something of value by trick, deceit, chicane or overreaching.'" McNally v. United States, 483 U.S. 350, 358 (1987) (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)). Accord Carpenter v. United States, 484 U.S. 19, 27 (1987).

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991).

To satisfy the second requirement—use of the mail to execute the scheme—"the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" Schmuck v. United States, 489 U.S. 705, 710–11 (1989) (citations omitted). Moreover, the mailing of communications themselves "need not contain any misrepresentations." Kehr Packages, Inc., 926 F.2d at 1413 (quoting Schmuck, 489 U.S. at 715). Rather, "innocent mailings" or "ones that contain no false information" may satisfy the mailing element. Id. at 1413-14 (quoting Schmuck, 489 U.S. at 715).

In asserting a RICO claim with mail fraud as the predicate act, the plaintiff must adhere to "the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)." Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc., 87 F. App'x 227, 231 (3d Cir. 2003). To satisfy this standard, the plaintiff must plead or allege "the date, time[,] and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Indeed, a plaintiff must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentations." Bonavitacola Elec. Contractor, Inc., 87 F. App'x at 231 (citation omitted). Stated differently, the plaintiff's pleading must contain the "who, what, when and where details of the alleged fraud." Id. (quoting Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network, No. CIV. A. 99-4653, 2001 WL 41143, at *3 (E.D. Pa. Jan. 18, 2001)).

Tested against the foregoing pleading standard, the Court finds that Plaintiffs have failed to plead conduct that could reasonably be viewed as racketeering activity. Notwithstanding Plaintiffs' failure to plead with particularity the "circumstances" of the alleged mail fraud as required by Rule 9(b), the allegations pertaining to Defendants' interference with Plaintiffs' access to the Township's sewer system while charging them for nonuse of that sewer system simply do not qualify as an actionable scheme to defraud within the meaning of the mail fraud statute. [20] Indeed, even viewing these allegations in the light most favorable to Plaintiffs, it is

---

[20] In addition, the Court finds that Plaintiffs' RICO claim against the Township, the Authority, and the individual Municipal Defendants in their official capacities fails as a matter of law because such entities are municipal corporations and thus unequivocally immune from liability under RICO. See Genty v. Resolution Trust Corp., 937 F.2d 899, 914 (3d Cir.1991) (holding that "a civil claim brought under [Section] 1964(c) of the RICO Act, with its mandatory award of

apparent that Plaintiffs have adduced no plausible facts from which the Court could infer that Defendants participated in a "scheme to defraud involving some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Kehr, 926 F.2d at 1415.

In assessing whether the complaint's allegations support a "scheme to defraud," as is required to satisfy the "racketeering activity" element of a RICO claim predicated on mail fraud, the Court is informed by the Township's local Ordinances and prevailing case law. The Township's Code of Ordinances[21] reveals the following with regard to connections to the public sewer system:

> § 303. Use of Public Sewer Required.
>
> 1. The owner of any improved property[22] adjoining or adjacent to or whose principal building is within one hundred fifty (150) feet from the sewer system shall connect such improved property with and shall use such sewer system, in such manner as this Township may require, within sixty (60) days after notice to such owner from this Township to make such connection, for the purpose of discharge of all sanitary sewage and industrial wastes from such improved property; subject, however, to such limitations and restrictions as shall be established herein or otherwise shall be established by this Township, from time to time.
> . . .

---

treble damages which are punitive in character, cannot be maintained against a municipal corporation").

[21] The Township's Ordinances are available at: http://library.amlegal.com/nxt/gateway.dll/Pennsylvania/southannvilletwp_pa/codeofordinancesofthetownshipofsouthannv?f=templates$fn=default.htm$3.0$vid=amlegal:southannvilletwp_pa (last visited on Mar. 14, 2018). These Ordinances are public records of which this Court may properly take judicial notice in considering dismissal of an action for failure to state a claim.

[22] "Improved Property" is defined in Section 203 of the Township's Ordinances as "any property within the Township upon which there is erected a structure intended for continuous or periodic habitation, occupancy or use by human beings or animals and from which structure sewage shall or may be discharged."

§ 304. Building Sewers and Connections.

> 5. All costs and expenses of construction of a building sewer and all costs and expenses of connection of a building sewer to a sewer shall be borne by the owner of the improved property to be connected; and such owner shall indemnify and save harmless this Township and the Authority from all loss or damage that may be occasioned, directly or indirectly, as a result of construction of a building sewer to a sewer.

Pursuant to the Township's Ordinances, Plaintiffs are required to connect to the sewer system, and all costs attendant to connecting with the sewer line are "borne by the owner of the improved property to be connected."

The fact that the Township requires connection to the sewer system is significant. Indeed, in Perano v. ORD Sewer Authority, 47 A.3d 210 (Pa. Commw. Ct. 2012), the Pennsylvania Commonwealth Court addressed whether a municipal authority "may impose sewer fees upon [an] . . . owner of property who is required by [o]rdinance to connect to the sewer system if, in violation of the [o]rdinance, the property owner fails to connect." Id. at 216. In Perano, the court held that a sewer authority could properly assess sewer fees on a property owner even though he had not connected to the sewer system because the property owner was required by ordinance to connect to the sewer system. Id. The court reasoned that, had the property owner in Perano "connected to the sewer system as he was required to do, there is no question that he would be required to pay the very same sewer fees he now disputes," and further remarked that "'[t]he rental charges are utilized to meet many fixed costs incurred by the township; costs such as operation expenses, maintenance, repair, inspection and depreciation which are incurred whether or not a particular individual is tapped into the sewer system.'" Id. at 217 (quoting Coudriet v. Benzinger Twp., 411 A.2d 846, 848 (Pa. Commw. Ct. 1980)).

Like the property owner in <u>Perano</u>, Plaintiffs are required by ordinance to connect to the sewer system. Thus, Plaintiffs' contention that Defendants somehow engaged in a scheme to defraud them through the use of mailed invoices reflecting charges assessed for sewer services from which Plaintiffs never directly benefited is wholly unavailing, given that the rates charged to Plaintiffs are contemplated by the Township's mandatory connection Ordinance. <u>See</u> <u>Coudriet</u>, 411 A.2d at 848 ("We agree with the township that to allow individual property owners to elect not to tap into a sewer system accessible to it would circumvent the statutory purpose behind the imposition of sewer rental and undermine the financial soundness of a municipality's sewer system."). Accordingly, the invoices for sewer services, alone, do not qualify as racketeering activity on the part of Defendants.

Likewise, no scheme to defraud can be inferred from the disconnection of Plaintiffs' water supply and the filing of the municipal lien for failure to satisfy the sewer service arrearages, as the Authority is empowered by statute to charge the fees that are the subject of the lien and are the result of the water service termination. <u>See</u> 53 Pa. Stat. § 3102.502 ("If the owner . . . served by a water utility neglects or fails to pay . . . a rental, rate[,] or charge for sewer, sewerage[,] or sewage treatment service imposed by a municipality or municipal authority, the water utility shall, at the request and direction of the municipality [or] the authority . . . shut off the supply of water to the premises until all overdue rentals, rates, charges and associated penalties and interest are paid."); 53 Pa. Stat. § 7106 ("[M]unicipal claims and municipal liens shall arise when lawfully imposed and assessed."). As Plaintiffs cannot plead sufficient facts to permit the Court to draw a reasonable inference that Defendants engaged in racketeering activity through the commission of predicate acts of mail fraud, the Court will grant Defendants' motions to dismiss Count IV of Plaintiff's complaint with prejudice.

### 4. Pendent State Law Claims

The remaining Counts asserted in Plaintiffs' complaint contain state law claims. Where a district court has dismissed all claims over which it has original jurisdiction, as is the case here, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. 28 U.S.C. § 1367(c)(3). The decision regarding whether the Court may exercise supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. Id. In the absence of a viable federal claim, and finding nothing in the record to distinguish this case from the ordinary one, the Court finds that the balance of factors "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Therefore, the Court will dismiss the state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### B. Motion for Leave to Amend Plaintiffs' Complaint

Plaintiff has filed a "renewed motion for leave to amend or in the alternative to consider this submission as a brief in opposition to Defendants' motions to dismiss." (Doc. No. 51.) While styled in the alternative as a brief in opposition to Defendants' motions to dismiss, the motion itself appears to be a renewed request for leave to amend Plaintiffs' complaint "on the grounds that new evidence [has] bec[o]me available."[23] (Id. at 1.)

---

[23] To reiterate, Plaintiffs' brief in support of their motion for leave to amend contains their arguments in opposition to Defendants' motions to dismiss, and thus has been construed as a brief in opposition to Defendants' motion to dismiss. By contrast, Plaintiffs' motion for leave to amend contains Plaintiffs' arguments in support of their motion for leave to file an amended complaint. (Doc. No. 52.)

Plaintiffs represent in the motion that they participated in mediation proceedings on May 30, 2017, after filing a claim with the Pennsylvania Public Utility Commission against the Pennsylvania American Water Company regarding the disconnection of their water services in April of 2013. (Id. at 1-2.) Plaintiffs assert that the delay in mediating this matter was the result of the Pennsylvania American Water Company's "refusal to release . . . data and information about their discussions with . . . the Authority." (Id. at 2.) While unsuccessful, the mediation has purportedly "yielded certain material facts" that Plaintiffs have since incorporated into a proposed, redlined amended complaint totaling 115 pages in length, which Plaintiffs have attached to their motion for leave to amend. (Doc. No. 51-3.) A review of the proposed amended complaint reveals that Plaintiffs name Kristen S. Yeagley as an additional Defendant and assert four new causes of action grounded in state law: namely, "breach of fiduciary duty," "intentional and tortious interference with contractual relations," "aiding and abetting the commission of [a] tort," and "deceit and fraud." (Id. at 4-5.) Moreover, Plaintiffs include several additional allegations, summarized as follows:

1) The PIRMA and Thomson Defendants together with Bellwoar & McAndrew, LLP, counsel for the Municipal and PIRMA Defendants, are "members or participants of a common enterprise . . . involved in wrongful acts against the [Plaintiffs] through . . . financing and facilitating a lawsuit for improper purposes and enabling, aiding and abetting the retaliatory conduct of the Municipal Defendants" (id. ¶ 28);

2) Defendants conspired together to intimidate Plaintiffs through filing concerted motions seeking the imposition of Rule 11 sanctions against Plaintiffs (id. ¶¶ 156-59); and

3) Defendants have "facilitate[ed], maintain[ed], or support[ed] wrongful legal proceedings or municipal actions [against Plaintiffs], caus[ed] . . . disconnect[ion] of water and sewer services to [Plaintiffs'] property, misinform[ed] authorities and/or forward[ed] intimidating or wrongful communications to [Plaintiffs]" (id. ¶ 185).

The Defendants jointly oppose Plaintiffs' motion to amend.  (Doc. No. 59.)

In civil rights cases, district courts must generally extend plaintiffs an opportunity to amend the complaint before dismissal.  <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007).  However, a district court can refuse to permit a curative amendment on grounds of bad faith, undue delay, prejudice, or futility.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).  Informed by this standard governing the amendment of pleadings, the Court finds that it would be futile to allow Plaintiffs to file the proposed amended complaint.  Indeed, as this Court has extensively detailed above, a liberal reading of the original, operative complaint reveals no set of facts that could plausibly give rise to a viable federal cause of action under Section 1983 or the civil RICO statute.  Neither the addition of Kristen S. Yeagley as a Defendant, nor the inclusion of factual allegations pertaining to  Defendants' alleged ongoing misconduct, including their coordinated filing of motions for Rule 11 sanctions, saves Plaintiffs' untimely and unmeritorious federal claims.  Additionally, because this Court has declined to retain supplemental jurisdiction over Plaintiff's ancillary state law claims asserted in the original complaint due to the lack of an anchoring federal claim to which supplemental jurisdiction could attach, it will likewise decline to exercise supplemental jurisdiction over the proposed state law claims.  Accordingly, the Court will deny Plaintiffs' motion for leave to file an amended complaint (Doc. No. 51), as any such amendment would be futile.

C.     <span style="font-variant: small-caps;">Cross-motions for Sanctions Under Federal Rule of Civil Procedure 11</span>

Lastly, the parties have filed cross-motions for sanctions under Federal Rule of Civil Procedure 11. [24] (Doc. Nos. 24, 25, 43, 53, 54, 55.)

---

[24] At the outset, the Court will deny Plaintiffs' cross-motions for sanctions that are based on Defendants' filing of their motions for sanctions as plainly meritless.  <u>See</u> <u>Moeck v. Pleasant</u>

Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). By signing, filing, submitting, or later advocating a pleading, written motion, or other paper to the court, the:

> attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) [the filing] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

To comply with the mandates of the Rule, a litigant is required to conduct a "reasonable inquiry into both the facts and law supporting a particular pleading." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 187 n.7 (3d Cir. 2002); see Lieb v. Topstone

---

Valley Sch. Dist., 844 F.3d 387, 391 (3d Cir. 2016) (Rule 11(c)(6) requires only that a district court explain the basis of its order when the court imposes a sanction, not when it denies sanctions."); Fed. R. Civ. P. 11(c)(6) ("An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.").

Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986) ("The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"). By imposing an affirmative duty on a litigant to conduct a reasonable inquiry into the facts and relevant law before filing submissions with the court, Rule 11 serves to deter baseless filings, streamline litigation, and curb abuses of the judicial system. See Bradgate Assoc., Inc. v. Fellows, Read & Assoc., Inc., 999 F.2d 745, 751 (3d Cir. 1993); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393–94 (1990).

Under controlling Third Circuit precedent, an attorney's conduct is tested against the standard of objective reasonableness. The objective standard espoused by Rule 11 is one of reasonableness under the circumstances, which is defined as an "objective knowledge or belief at the time of the filing that the claim was well-grounded in law and fact." See Ford Motor Co. v. Summit Motor Products, Inc. 930 F.2d 277, 289 (3d Cir.1991) (citation omitted). In scrutinizing a submission against these requirements, "the wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988) (internal citations and quotation marks omitted).

Defendants' motions for sanctions challenge the sufficiency of Plaintiffs' pre-filing investigation. In their respective motions for sanctions, Defendants urge the Court to impose sanctions against Plaintiffs in the form of attorneys' fees and costs to penalize Plaintiffs for filing a complaint that is "not warranted by existing law or [supported by] a colorable legal argument, and is based on incorrect factual assertions which will never have evidentiary support, regardless of any further investigation or discovery." (Doc. No. 31 at 14.) The Defendants largely rely on the previously identified pleading defects raised in connection with their motions to dismiss and

an exhaustive account of Plaintiffs' conduct in previous civil proceedings before the state court as support for their position that a reasonable inquiry into the facts and law would have revealed to Plaintiffs the lack of a legally or factually supportable cause of action. As Defendants persuasively argue:

> Plaintiffs have burdened the . . . Defendants with the significant and unavoidable cost of defending themselves without first conducting a reasonable investigation into the facts, performing necessary legal analysis, or identifying any factual or legal basis or theory to support liability. This burden includes significant time and resources devoted to communicating with co-defendants and opposing counsel as well as strategy, research, and the drafting of letters, motions, and briefs. Plaintiffs' willingness to impose litigation costs without any concern for the validity of their allegations constitutes sanctionable conduct.

(Doc. No. 46 at 9.)

The Court, in large part, agrees. It is apparent to this Court that Mr. Kovarik, an "attorney duly licensed to practice law and in good standing in the Commonwealth of Pennsylvania and several other jurisdictions," who is in the unique position of representing himself and his wife in this action, plainly failed to conduct a reasonable inquiry into the law governing the federal causes of action advanced in the complaint prior to initiating this action, despite his assertions to the contrary. (Doc. No. 53-3.) A rudimentary pre-complaint investigation into the law would have informed him that Plaintiffs' First Amendment and abuse-of-process claims under Section 1983 are clearly barred by the two-year statute of limitations and that the sewer fees assessed against Plaintiffs cannot form the basis of a viable RICO action, as addressed in detail, supra. See Segarra v. Messina, 153 F.R.D. 22, 30 (N.D.N.Y.), on reconsideration, 158 F.R.D. 230 (N.D.N.Y. 1994) ("[E]ven when plaintiff based his RICO claim on legitimate predicate acts in 18 U.S.C. § 1961(1)—obstruction of justice and extortion— plaintiff failed to realize that these predicate acts require the showing of certain elements which

the plaintiff cannot in good faith allege is present in the instant case . . . [, leading to the] conclusion that plaintiff failed to investigate the laws as required under Rule 11.").

However, recognizing the Third Circuit's preference for imposing sanctions in only the most egregious cases, and mindful that Rule 11 should not be utilized as a fee shifting device, the Court will decline to impose monetary sanctions on this record. See Fed. R. Civ. P. 11(c) (amending former Rule which made imposition of sanctions mandatory upon finding of Rule 11 violation by providing that the court retains discretion to impose a sanction on a litigant who is found to have violated Rule 11); Doering, 857 F.2d at 194 ("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."); see also Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 263 (3d Cir. 2011) ("Rule 11, however, is a sanction of last resort."); Keister v. PPL Corp., 318 F.R.D. 247, 256 (M.D. Pa. 2015) ("Rule 11 sanctions should never be viewed as a general fee shifting device. By and large federal courts are bound by the "American Rule," requiring parties shoulder their own legal expenses.") (quoting Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987)).

Nevertheless, Mr. Kovarik is advised that the Court will entertain Rule 11 sanctions against him in the future should he choose to ignore the admonitions of Rule 11 and file further pleadings in this Court that advance frivolous, legally unreasonable, or factually foundationless claims pertaining to this ongoing municipal dispute. See Fed. R. Civ. P. 11, adv. cmte. notes (noting that Rule 11 "subject [s] litigants to potential sanctions for insisting upon a position after it is no longer tenable" and "provid[es] protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention"); see also Eaton v. Tosti, No. CIV.09-5248 (WJM), 2010 WL 2483318, at *11 (D.N.J. June 4, 2010) ("[T]he Court notes, for the benefit of [p]laintiff's attorney, that it seriously considered Rule 11 sanctions due to the lack

of legal basis for many of the claims asserted . . . The Court declines to begin the sanction process <u>sua</u> <u>sponte</u> or otherwise against [p]laintiff's lawyer at this time; however, [p]laintiff's lawyer is placed on NOTICE that the Court will entertain sanctions should he submit another pleading with claims clearly unwarranted by fact or law.").

III.     CONCLUSION

Based upon the foregoing, the Court will: (1)  grant Defendants' motions to dismiss Counts I, II, IV, and V of Plaintiffs' complaint with prejudice inasmuch as they assert federal causes of action under Section 1983 and RICO, and decline to exercise supplemental jurisdiction over any remaining state law claims (Doc. Nos. 11, 14, 15); (2) deny Plaintiffs' renewed motion for leave to file an amended complaint (Doc. No. 51); and (3) deny as moot Defendants' motion to stay discovery (Doc. No. 72), and Plaintiffs' "motion for contempt and in opposition to Defendants' motion to stay" (Doc. No. 73). Further, the Court will lift the stay on briefing with regard to Defendants' motions for sanctions, and deny the parties' motions for sanctions (Doc. Nos. 24, 25, 43, 53, 54, 55).

An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

37